# Eastern Carbon Black Company v. Stephens' Administrator.

### (Decided October 12, 1926.)

## Appeal from Floyd Circuit Court.

1. Explosives.—Generally, person leaving explosive exposed and unguarded on his premises is liable for injuries to trespassing children therefrom.
2. Explosives.—Degree of care required by owner of explosives is only such as is commensurate with apparent danger.
3. Explosives.—Evidence of manner in which blasting powder was stored held insufficient to go to jury on issue of negligence as to child.

A. B. COMBS and B. F. COMBS for appellant.

C. B. WHEELER for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Reversing.

Appellant, Eastern Carbon Black Company, owns and operates a carbon black manufacturing plant at Osborn Station, on Beaver creek, in Floyd county, Kentucky. The factory is housed in several large buildings where the various processes of manufacturing, packing and storing carbon black are done. The grounds used in connection with the plant are uninclosed, and, though the testimony without contradiction establishes that the rules of the company forbade children to play there and that appellant's servants sought to enforce the rule and frequently drove from the grounds children found playing there, some of them at times going to the extent of whipping their own children for doing so, yet it appears that the children of the neighborhood at times played upon the grounds surrounding appellant's manufacturing plant.

Among the other buildings on the ground there is a small, two-room structure, commonly referred to in the evidence as the tool house. One of its rooms was used as a storage place for the spools of twine and paper bags used by appellant in packing its product. In the other room appellant kept a quantity of lubricating oil and a quantity of gasoline, stored in steel drums or containers common to these products, and a few small tools such as wrenches and hammers and things of the sort. It seems that in

clearing the ground of stumps when building, 25 pounds of blasting powder had been purchased, packed in a metal container with a screw cap common to that product. Approximately half of the powder was used in blowing the stumps and the rest of it in the container was stored in the same room in which the lubricating oil and gasoline were kept, the container being placed on a shelf on one wall of the room seven feet from the floor.

The evidence establishes that children, heedless of the warnings, occasionally had gone into the room where the twine was stored to get strings. The only occasion previous to the time of the injury that any children are shown to have entered the room where the oil and gasoline were kept was about noon the same day when a brother-in-law of appellee's intestate, one of appellant's servants, who then stood in *loco parentis* to him, saw him and one or two other children in there. The situation didn't seem to impress him as being fraught with danger to the children, because he took no further steps than to tell the children to leave. It did not occur to him that for the protection either of his master or of the child, for whose safety in *loco parentis* he then was responsible, he should fasten the door of that room, though he knew the powder was stored there. No other building appears ever to have been entered by the children.

Late in the afternoon of a Sunday in the latter part of December, 1922, Lundi Stephens, a boy then eight years of age, and a little playmate a few months younger, both of whom appear frequently to have been warned to keep off of the grounds of appellant's manufacturing plant, and both of whom appear from the evidence to have been whipped previously by their parents, servants of appellant, for playing upon these grounds, went to the tool house and into the room where the lubricating oil and gasoline and powder were stored; devised a means of climbing to the shelf on which the powder was stored; lowered the metal container to the floor of the room; unscrewed the cap from it with a wrench; took a quantity of powder which they put in their pockets, and left. They soon got in company with several of their playmates and either in the yard of Lundi Stephens' sister, at whose home he was then visiting, or an adjoining yard, the little boys built a fire and proceeded to amuse themselves by pitching the powder into the fire and watching it flash and burn. Lundi Stephens, while doing this, unfortunately got too close to the fire and the flash from the pow-

der which he threw into the fire ignited the powder left in his pocket, which set his clothing on fire, resulting in burns so serious that he died therefrom.

This action was then instituted by his father as his administrator to recover for his death from appellant, upon the theory that it was guilty of negligence in storing the powder as it did upon its premises and that such negligence was the proximate cause of the child's death. The trial below resulted in a judgment for $1,000.00, from which this appeal is prosecuted.

The following from 17 R. C. L. 664 was adopted by this court, in Stephens v. Stephens, 172 Ky. 780, as the rule by which we may determine the liability or non-liability of a person storing explosive on his premises:

> "As a general rule a person leaving exposed and unguarded on his premises an explosive which is found by trespassing children is liable for any injuries resulting from its explosion. This rule is based on the very material and reasonable assumption that children, wherever they go, must be expected to act upon childish instincts and impulses; and those who are chargeable with a duty of care and caution towards them must calculate upon this, and take precautions accordingly. If persons leave exposed to the observation of children anything which would be tempting to them, and which they in their immature judgment might naturally suppose they were at liberty to handle or play with, such persons should expect that liberty to be taken."

Cases of this character always present two questions. It must be determined from the facts of each case whether there is evidence of negligence upon the part of the one sought to be charged, and whether or not the negligence, if any, is the proximate cause of the injury. The degree of care required is such as is commensurate with the apparent danger. As was written by this court in Ball v. Middlesboro Town and Lands Company, 68 S. W. 6.:

> "The ground of liability in this class of cases is that the defendant failed to exercise such care as might reasonably be expected of a person of ordinary prudence under the circumstances."

When the facts of this case are examined, in the light of the principles above, can it be said that intestate's administrator, the appellee, made a case of negligence upon the part of appellant authorizing a submission of this case to the jury? Appellant insists that he did not and that it was entitled to a peremptory instruction at the close of the evidence. There is little contradiction or controversy as to the facts of this case which have been summarized above. The powder which ignited the fire which caused the death of the child was stored by appellant in one of its buildings upon its own land where it had the legal right to store it. What more appellant could have done to prevent children trespassing upon its grounds short of building a stockade around them which they could not climb than it did do under the undisputed evidence herein can not well be understood. The little boy for whose death appellant is sought to be held responsible had frequently been warned by his brother-in-law, with whom he lived, one of appellant's employees, to keep off of its grounds and had on one or more occasions been whipped by him when caught there after the warning. It is true that the room in which the powder was stored could be entered through a door which at times was left open and which appears never to have been locked. But the container in which the powder was kept as located on the shelf where it was stored was not visible until the room had been entered. Nothing kept in the room visible through the open door to those passing was calculated to be attractive to children or inviting to their childish instincts and fancies to enter and investigate. The powder itself was not exposed but was stored in a metal container which was placed upon a shelf seven feet in height and out of reach of children that might by chance happen to enter the room. The container could be reached by a child only after some means was devised whereby he could climb to the shelf on which it was stored. The powder then could be reached only after devising means of unscrewing the cap on the opening of the container. The powder in and of itself was not inherently dangerous. The container in which it was stored might have been forced from the shelf by a child using any means with which that might be done and have been thrown to the floor without any danger whatever and the container holding it rolled and tumbled about by a child at play with per-

fect safety. It could be exploded only by coming in contact with fire. Hence a distinction between this and what may be termed the dynamite, dynamite cap, and other explosive cases where the explosive may be set off by a jar or concussion. The degree of care is only required to be commensurate with the dangerous qualities of the explosive.

Under these facts, can it be said, as is required by the rule above quoted from the Stephens case, that appellant left the explosive "exposed and unguarded" on its premises? Can it be held that in the exercise of reasonable care appellant must have anticipated that a child would discover the powder where it was stored, would devise a means of climbing to its storage place, would remove and uncap the container, would carry away a portion of the powder and would be burned while throwing it into a fire which he and his little companions would build? Our most careful consideration of the facts of this case compel us to answer both propositions in the negative. No negligence upon the part of appellant, in storing the powder upon its premises as it did, appearing, the attempt to fasten upon it liability for the death necessarily fails. Appellant's motion for a peremptory instruction at the close of the evidence should have prevailed, and the trial court erred in failing to award it. Having reached that conclusion the court deems it to be unnecessary to discuss or determine any of the other questions presented by the appeal.

For the reasons indicated, the judgment herein is reversed and the cause remanded, with direction that a new trial be granted, and for other proceedings consistent herewith.