**E. L. DICK, D/B/A Dick Auto Parts & Salvage, Appellant,**

v.

**June HIGGASON, Appellee.**

Court of Appeals of Kentucky.

March 13, 1959.

James S. Shaw, Louisville, for appellant.

E. Preston Young, Louisville, for appellee.

STEWART, Judge.

June Higgason sued E. L. Dick d/b/a Dick Auto Parts & Salvage (hereinafter called "Dick"), alleging he negligently permitted a minor, James Mercer, to obtain a 22-calibre rifle from his office and, in the use of it, young Mercer shot Higgason who at the time was working on a bulldozer in a field some distance away. Upon submission of the case to the jury a verdict of $2,797.-70 was rendered and judgment was duly entered.

Dick appeals urging a reversal upon the basis that he was entitled to a directed verdict at the conclusion of Higgason's testimony, pursuant to a motion made therefor.

The facts are undisputed in any essential detail. Dick for many years had been engaged in buying wrecked automobiles, taking them apart and then reselling the useful parts. On the lot where this business has been transacted is space for wrecking and burning "junkers". A medium-sized building also stands on the lot. The first two rooms are used to transact business and for storage of automobile parts; the last room, the one with which we are concerned, is employed as Dick's private office. In it are a desk, chairs, a filing cabinet and a water cooler.

Dick was away from his place of business all day on June 5, 1956, the date of the mishap, engaged in buying wrecked automobiles. His brother, Allen Dick, was left in charge, and another employee, Bob Mercer, was at work on the premises. The latter person has been in Dick's employ some three or four years and, on the above day, had brought along his son, James Mercer, then approximately age 12. The boy had previously been at Dick's place of business with his father on several occasions and had played around on the lot. Dick had knowledge of these visits, but, according to his testimony, he had never seen the boy come into his private office.

A few days before June 5, 1956, Dick purchased a 22-calibre rifle from a friend and, after trying it out, had put it away in his private office behind the desk, alongside a rifle of similar calibre he had kept in this same place for several months. Neither of these weapons was loaded. The remainder of the cartridges he had been using were returned to the box and it in turn was stashed away in the rear part of the middle drawer of the desk.

When Bob Mercer arrived at work that morning he unlocked the doors of the building and afterwards proceeded about his usual duties. Somewhat later, his son discovered the guns, took one of them and, upon ascertaining it was not loaded, searched through the desk drawers and eventually found the half box of 22-calibre cartridges in the drawer where Dick had secreted them. He then took the gun and the cartridges, went outside to the rear of the lot and, after loading the gun, commenced target practice by firing into a field.

His father heard the shots and, thinking someone other than the boy was shooting the rifle out in the field, went to warn his son to stay away from that location. The father did not know at this time the boy had slipped the gun out of the private office. The boy, hearing his father approaching, deftly concealed the weapon and cartridges under some junked auto seats. In the early afternoon of that day the boy returned to the spot where he had hidden the gun and proceeded to do some more shooting.

One of the bullets he fired accidentally struck Higgason who, as we have stated, was at the time operating a bulldozer on a tract adjoining Dick's lot, owned by the Kenwood Drive-In Theatre. It was not until the following day, and after the police had investigated the case and obtained a confession, that Dick, and also the father, learned the boy had secured the rifle, loaded it and fired the bullet into Higgason's body. Higgason has completely recovered from the wound inflicted on him without any ill effects.

The contention was advanced in the trial court, and is reiterated here, that Dick

was negligent when he, knowing of the frequent visits of the boy, James Mercer, to his place of business, left weapons in full view to all who entered into his private office, which place was unlocked during the day and accessible to anyone who desired to enter it.

In an opinion of the trial judge, which accompanies the record, and also in appellee's brief, the view is taken that the facts developed in the instant action, and the principles of law applicable thereto, are controlled by those cases involving children who are attracted or lured to a location by the presence of dynamite caps and who, yielding to temptation to handle them, injure someone, or sustain injuries themselves, when they explode them. See Jones Savage Lumber Co. v. Thompson, 233 Ky. 198, 25 S.W.2d 373; Eastern Carbon Black Co. v. Stephens' Adm'r, 216 Ky. 85, 287 S.W. 215; and Stephens v. Stephens, 172 Ky. 780, 189 S.W. 1143.

However, the Thompson case pointed out that, in order to impose liability upon anyone responsible for such acts of placement, the evidence must show the dynamite caps were left at a site where or near which children were known to be in the habit of congregating. The Eastern Carbon Black Company case, as well as the case of Stephens v. Stephens, supra, emphasized that a person who placed an explosive upon his premises was liable for any injuries resulting from its explosion if such was left in an unguarded and exposed position.

■ We do not believe the dynamite cap cases relied upon to sustain the judgment are analogous to the one under discussion. Dynamite caps, like a vicious animal or a poisonous reptile, are dangerous per se. The case of Kuhns v. Brugger, 390 Pa. 331, 135 A.2d 395, so strongly relied upon by Higgason, falls into this category of cases. The court dealt in that case with a loaded revolver, the procuring of which by a 12-year-old boy from an unlocked dresser drawer and the handling of which discharged it and produced the injury involved there. It cannot be said an unloaded weapon is dangerous in a comparable way, even if it is out in the open in a room. Both the rifles were left in a harmless state by Dick in his private office behind his desk. James Mercer was therefore compelled to rummage through the desk drawers to secure the very things, namely, the cartridges, that would convert the rifle into an instrumentality fraught with peril.

Nor can it be said the rifles were left in a place where children habitually gathered with the knowledge of Dick. It was not proved that any other unattended child had ever theretofore been in his private office. True, he knew the Mercer boy visited his business premises and played about on the lot where the junked cars were kept, but he testified he had never on any occasion seen him in his private office. Thus, it cannot be said under the circumstances that a deadly device was made accessible to children as in the manner noted in the dynamite cap cases.

■ In determining the proximate cause of an injury growing out of an act of negligence, the rule is the injury must be the natural and probable consequence of the act of negligence; that is, such a consequence as under the surrounding circumstances of the case might and ought to be foreseen by the wrongdoer as likely to flow from his act. See Milwaukee & St. P. Railway Company v. Kellogg, 94 U.S. 469, 475, 24 L.Ed. 256.

■ The only evidence of alleged tortfeasance in the case at bar was Dick's retention in his private office of two unloaded rifles. When he rendered the rifles harmless in every ordinary sense by removing the cartridges from their chambers and then placing them in a box in the rear part of his desk drawer, no duty thereafter was imposed upon him to anticipate that someone would go into his desk by stealth, ransack it in order to

abstract the cartridges therefrom and thereafter take one of the weapons and in its use accidentally shoot a bullet into the body of a man working near by. Dick's decision to leave the rifles in his office, under the circumstances, cannot be held to comprehend the possibility of resulting harm or danger to anyone by the intervention of the acts of James Mercer in securing the gun and the cartridges and in employing them in target practice.

Can it be said the injury to Higgason was the natural and probable consequence of Dick's leaving the two unloaded weapons behind his desk in his private office? The utmost that can be said is that such a consequence might possibly happen. But results which are only possible cannot be spoken of as either probable or natural; for the latter are those events which are likely to happen and for that reason should be foreseen. Things which are possible may never happen, but those which are natural or probable are those which do happen and happen with such frequency or regularity as to become definitely predictable. In the ordinary affairs of life, to impose such a standard of care as requires precaution on the part of individuals against all the possibilities which may occur, is establishing a degree of responsibility quite beyond any legal limitations which have yet been declared by this Court.

We conclude no act of Dick can even be said to be the remotest cause of Higgason's injury. The unfortunate occurrence here was an event which resulted undesignedly and unexpectedly, and which could not have been anticipated as a probable or natural result. The lower court should have directed a verdict for Dick.

Dick moved for a directed verdict at the close of appellee's evidence and again at the close of all the evidence. Following the rendition of the verdict, he moved for judgment notwithstanding the verdict. All these motions were overruled. Under these circumstances this Court has authority pursuant to CR 50.02 and CR 50.03 to direct the lower court to enter judgment, notwithstanding the verdict, rather than direct that a new trial be granted. See Coca Cola Bottling Works of Lexington v. Bingham, Ky., 277 S.W. 2d 468. We see no reason for granting a new trial in this case in view of the evidence recited and the law shown applicable thereto.

Wherefore, the judgment is reversed with directions that it be set aside and a new one entered for Dick.