Gregory Allen SPIVEY, an Infant By and Through Hobart Spivey, his next friend, et al., Appellants,

v.

R. T. SHEELER and Carolyn Sue Sheeler, Appellees.

Court of Appeals of Kentucky.

Aug. 23, 1974.

Rehearing Denied Nov. 15, 1974.

Amos H. Eblen, Eblen, Howard & Milner, Lexington, for appellants.

W. R. Patterson, Jr., Landrum & Patterson, Lexington, for appellees.

JAMES S. CHENAULT, Special Commissioner.

The infant appellant, Gregory Allen Spivey, suffered an accidental gunshot

wound at the hands of Robert Sheeler, son of the appellees, R. T. Sheeler and Carolyn Sue Sheeler. This action was brought by the Spiveys individually and by Hobart Spivey as next friend of Gregory against the Sheelers for damages resulting from the injury.

The facts developed on the trial are largely undisputed and, so far as pertinent to the issue here presented, are as follows:

On a Friday afternoon following school Gregory, then 12 years of age, and a playmate, Dan Patrick, 11 years of age, met with Robert Sheeler, also 11 years of age, and another playmate, Ricky Creech, 14 years of age, and engaged in a discussion of playing kickball. The boys then entered the Sheeler home for the purpose of obtaining a ball. Neither of Robert's parents was at home. The boys spent some time in the home, perhaps long enough to play a mechanical game of soccer, but soon started for the outdoors again. On their way out they stopped to look at a glass-front gun case containing several guns. The gun case was locked and it was too tall for any of the boys to reach the top while standing on the floor. Robert climbed up on something and obtained the key from the top of the case, then unlocked the case, opened it and took out various guns and passed them around among his friends. Apparently all of the boys examined one or more guns and snapped the triggers and passed them around to the other boys. Robert got out a .25-caliber automatic pistol, waved it around, made some remark, and snapped the trigger. The gun discharged with the bullet piercing the body of Gregory.

At the conclusion of the appellants' case the trial court directed a verdict in favor of the appellees, the Sheelers, for the reason that there had been no showing of "any negligence on the part of the appellees which would entitle" the appellants to relief.

The question here before us is whether an issue of fact has been presented upon which reasonable men might differ, concerning the negligence or absence of same in parents maintaining within their home a highly dangerous instrumentality, a loaded pistol, in such a manner and in such a position that it was accessible to an 11-year-old son. If such actions on the part of the parents were negligence, it would be because of the reasonably foreseeable likelihood of a boy of tender years' being attracted to the use of said weapon and the likely consequence of serious harm following such untrained and inexperienced use. By granting a directed verdict the trial court determined that reasonable men could not differ on the question and that as a matter of law such conduct on the part of the parents was not negligence.

Appellants argue that four factors are present in this case to establish the failure of appellees to use the care of a reasonably prudent person under the circumstances. These are:

(1) minors were involved;

(2) both parents were absent from the premises at the time, being thus unable to exercise control over their infant son's conduct when they knew or should have known he had access to the home and would be with playmates;

(3) a loaded pistol, a highly dangerous instrumentality, was kept in the house, in a gun case having a glass front so that the guns therein were visible, and their son knew the key to the gun case was on top of the case; and

(4) boys of the age involved would be attracted by guns, and the small size of a .25-caliber automatic would make it appear more as a toy than a dangerous instrumentality.

Appellees counter with the argument that the injury was not foreseeable because none of the boys had previously opened the gun case nor been present when, if ever, their son had opened same;

that the gun case was in fact locked and the key was out of sight.

Basically, the resolution of this matter must turn on the standard of conduct expected or required of parents of minor children in having loaded deadly weapons in their household. The Restatement of Torts, 2nd, § 308, prescribes a general standard of conduct frequently cited by the courts, as follows:

"It is negligence to permit a third person to use a thing or engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others."

In the Comment b under this section, at p. 100, is the following:

"The rule . . . has its most frequent application where the third person is a member of a class which is notoriously likely to misuse the thing which the actor permits him to use. Thus, it is negligent to place loaded firearms or poisons within reach of young children or feeble-minded adults."

In § 316, defining in more specific detail the duty of a parent, the Restatement continues:

"A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent:

(a) knows or has reason to know that he has the ability to control his child, and

(b) knows or should know of the necessity and opportunity for exercising such control.

"Comment: a. While the father as head of the family group is no longer responsible for the actions of all members of his household or even for those of his minor child, he is responsible for their conduct insofar as he has the ability to control it. This duty is not peculiar to a father. It extends to the mother also insofar as her position as mother gives her an ability to control her child" (pp. 123–124).

■ An application of § 308, supra, was made by the Supreme Court of Kansas in Wroth v. McKinney, 190 Kan. 127, 373 P.2d 216 (1962), a case involving a loaded gun and an infant. Wroth, a plumber, the father of a deceased infant, brought suit for the wrongful death of his son against a householder who kept a loaded gun in his home. The householder had engaged the plumber to make a service call, and he knew the plumber frequently was accompanied on such calls by his infant child. While the plumber was working in the householder's home the infant found the gun and fatally shot himself. In discussing the degree of care of the householder, the court stated:

"One knowingly dealing with such an instrumentality which may cause harm to others unless due care is exercised must answer for the results which follow from a negligent failure to exercise such care, and a higher degree of care is required in dealing with dangerous instrumentalities than in the ordinary affairs of life or business which involve little or no risk. As the hazard from the use or threatened use of dangerous instrumentalities increases, the responsibility of the person employing them becomes stricter, and, in extreme cases, may be the equivalent of insurance of safety. Accordingly it is well settled that one who has in his possession, or under his control, an instrumentality exceptionally dangerous in character is bound to take exceptional precautions to prevent an injury being done thereby. In other words, the essential requirement of due care under the circumstances necessarily implies that the care required to prevent injury to others in using a dangerous in-

strumentality is a great or high degree, if not the greatest or highest degree, of precaution."

The opinion quotes from a Michigan case, Powers v. Harlow, 53 Mich. 507, 19 N.W. 257 (1884), concerning a child's propensities as follows:

"Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution toward them must calculate upon this, and take precautions accordingly. If they become exposed to the observation of children anything which would be tempting to them, and which they in their immature judgment might naturally suppose they were at liberty to handle or play with, they should expect that liberty to be taken."

■ In the Georgia case of Glean v. Smith, 116 Ga.App. 111, 156 S.E.2d 507 (1967), which involved the wounding of a six-year-old by a three-year-old, the court held it was for the jury, not the trial court, to determine whether, under all the circumstances of the case, negligence on the part of the parents was established, saying:

"It seems to be generally recognized, as a general principle of law, that one using or handling any instrumentality of an unusual or dangerous character is bound to take exceptional precautions to prevent injury thereby, and that children of tender years and youthful persons generally are entitled to a degree of care proportioned to their ability to foresee and avoid the perils that may be thus encountered."

■ Neither *Wroth* nor *Glean* is factually parallel to the instant case, but the overriding principle of the standard of conduct required of adults in possessing dangerous instrumentalities where children are or may be is the same. In an annotation at 68 A.L.R.2d 785 entitled "Negligence in leaving gun accessible—loaded guns", the following analysis appears:

"The fundamental common-law rule that a parent is not responsible for the tort of his child has frequently been referred to by the courts in considering the problem. However, the cases which take the view that a parent may be liable for injuries inflicted by his minor child with a gun which the parent has permitted him to have, or left accessible to him, are not in conflict with that general rule, since the liability of the parent in such cases is based upon his own negligence in his care and control of the gun under the particular circumstances of the case."

\*　　\*　　\*　　\*　　\*　　\*

"Evidence that defendant left a loaded gun in a place which he knew or should have known to be accessible to a child too immature or indiscreet to exercise the required care in the control of such an instrument, has frequently been held to raise a jury question as to defendant's responsibility for injuries caused by a child with a gun so left."

■■ Appellees insist that there was no evidence in any way directly involving them in the accident nor could it be contended that any negligence on their part directly and proximately caused the shooting, thereby mandating a directed verdict by the trial court. This contention flatly overlooks foreseeability on appellees' part. The correct rule is stated in Ohio Casualty Insurance Co. v. Commonwealth, Dept. of Highways, Ky., 479 S.W.2d 603, 605 (1972):

"In Kentucky we always have determined proximate cause on the basis of whether the injury is a natural and probable consequence of the negligent act, which test involves the element of foreseeability. . . . The test applies to negligently created *conditions* as well as to negligent conduct. . . .

"If reasonable minds could differ as to whether the injury was a natural and probable consequence of the negligent act, the question is for the jury . . . Differing human experiences may pro-

duce different conclusions as to what is natural or what is probable."

Appellees strongly urge that our decision in Dick v. Higgason, Ky., 322 S.W.2d 92 (1959), disposes of the matter and should control. Dick operated an auto-parts and salvage yard. He had purchased a .22-caliber rifle a few days before the incident involved and had placed it unloaded in his private office behind a desk. Cartridges for the rifle were placed in the rear part of a middle desk drawer, which was not locked. On the day in question an employee, who frequently had his 12-year-old son with him on the premises but who had never been known to enter the office, had again permitted his son to be with him on the lot. In Dick's absence the boy entered the office, found the rifle, ferretted around through the desk and discovered the cartridges, loaded the rifle, returned to the lot and engaged in target practice, wounding a person in an adjacent lot. In holding Dick free of negligence we carefully noted that foreseeability was the governing standard (emphasis added):

"In determining the proximate cause of an injury growing out of an act of negligence, the rule is the injury must be the natural and probable consequence of the act of negligence; that is, such a consequence as under the surrounding circumstances of the case *might and ought to be foreseen by the wrongdoer* as likely to flow from his act." 322 S.W.2d at p. 94.

It was determined in *Dick* that no such foreseeability existed. The child had never been in the private office. He presumably was under the control of his father, who was present on the lot. The child had no reason to enter the office, nor was his entrance known or expected. The gun was unloaded, the child rummaged into the back of a desk drawer to discover the cartridges. He then loaded the gun, returned to the lot, and commenced target practice. The defendant was not the parent of or otherwise related to the child.

In the instant case the appellees knew their son had access to the house. The gun was left loaded and alluringly in view to their son and his friends. There is a vast difference in danger and foreseeability of danger between an unloaded and a loaded gun, as thus pointed out in Dick:

"It cannot be said an unloaded weapon is dangerous in a comparable way, even if it is out in the open in a room. Both the rifles were left in a harmless state by Dick in his private office behind his desk. James Mercer was therefore compelled to rummage through the desk drawers to secure the very things, namely, the cartridges, that would convert the rifle into an instrumentality fraught with peril. . . . When he rendered the rifles harmless in every ordinary sense by removing the cartridges from their chambers and then placing them in a box in the rear part of his desk drawer, no duty thereafter was imposed upon him to anticipate that someone would go into his desk by stealth, ransack it in order to abstract the cartridges therefrom and thereafter take one of the weapons and in its use accidentally shoot a bullet into the body of a man working near by." 322 S.W.2d at pp. 94, 95.

Loaded guns are dangerous instrumentalities—highly dangerous instrumentalities in the inexperienced hands of a child. The propensity of young boys to be attracted by guns is a matter of common knowledge. One possessing a loaded gun in a situation where a child is present is under a greater responsibility to prohibit accessibility of same to the child. The locking of a gun case with a key kept on the top of the case was not such a precaution as can be said to leave no room for reasonable men to determine negligence. Whether appellees knew or should have known their son would bring his playmates into the home, the fact remains that they knew he had access to the house in their absence, and knew where the gun case and loaded gun were situated and available for intrusion and inspection of contents.

In ruling upon a motion for a directed verdict, the trial court "must draw all fair and rational inferences from the evidence in favor of the party opposing the motion, and a verdict should not be directed unless the evidence is insufficient to sustain the verdict. The evidence of such party's witnesses must be accepted as true." Clay, Kentucky Practice, Vol. 7, page 128, and cases therein cited.

We hold that the evidence in this case does not preclude reasonable men from finding negligence and that the trial court erred in directing a verdict for appellees.

The judgment is reversed and the cause remanded for further proceedings.

All concur.