Barbara SCHNEDER, Appellant,

v.

Gary F. ERDMAN and Elsie Erdman, Appellees.

No. 87–CA–891–MR.

Court of Appeals of Kentucky.

June 24, 1988.

James A. Nolan, Covington, for appellant.

Before COMBS, McDONALD and WEST, JJ.

COMBS, Judge.

This appeal from the Kenton Circuit Court concerns liability of landlords for injuries sustained by a guest of their tenants while on the premises.

Appellant, Barbara Schneder, had been a live-in guest of her friends, William and Nunna See, for two weeks when the accident occurred.

The Sees were the tenants of appellee, Elsie Erdman. When they first moved into the house there was a written lease, but at the time of the accident its term had expired and a renewal had not been executed. The original lease was never introduced at trial.

Erdman's grandson, appellee Gary Erdman, attended to the management of the property for his grandmother who was unable to do so due to her advanced age.

Appellant's injury happened when she walked out to the back porch and leaned against the wooden porch railing. Nunna See saw this and called out to appellant a warning not to do that. The railing gave way and appellant fell three to four feet to the ground which caused injury to her back.

Gary Erdman was unaware of any problem with the railing. He went to the property only four to six times annually. The parties disagree about how much upkeep of the property Erdman had agreed to perform.

Appellant sued the Erdmans, but did not sue the Sees. The trial court directed a verdict in favor of the Erdmans at the close of appellant's case in chief.

Appellant argues on appeal that the trial court erred in granting a directed verdict against her because there was sufficient evidence in the record that Erdman had covenanted to repair and maintain the premises, and had actual or constructive notice of the defective railing.

The current state of the common law in this area is *Starns v. Lancaster*, Ky., 553 S.W.2d 696 (1977). It reads:

> The rule is stated in 52 *C.J.S.* Landlord and Tenant § 471(3), at page 33 (1968), as follows:
>
> "As a general rule, a landlord who, without covenanting to repair, and without knowledge of latent defects, puts a tenant into full possession and control of the demised premises, not intended for public purposes, and which are free from defects of construction constituting a nuisance, will not, in the absence of statute, be liable for personal injuries sustained on the demised premises, by reason of the defective condition thereof, by the tenant and others entering on the premises under the tenant's title."
>
> This rule was adopted in our jurisdiction in *Clary v. Hayes*, 300 Ky. 853, 190 S.W. 2d 657 (1945) and was reaffirmed in *Mackey v. Allen*, Ky., 396 S.W.2d 55 (1965).

*Id.* at 697.

The Erdmans' first assertion is that appellant failed at trial to raise the issue of whether or not they covenanted to repair the premises. We disagree in view of the excerpts from the trial testimony immediately following in this opinion.

Mr. See's testimony included the following:

Q. All of your complaints about the premises were to Gary Erdman? Correct?

A. Correct.

Q. During the time you lived there, you would perform some minor repairs and some minor upkeep, yourself, would you not?

A. Not really. It wasn't my understanding. My responsibility lay only with taking care of the lawn.

Mr. Erdman's testimony included the following:

Q. Mr. Erdman, I am trying to save time, but answer this in any manner you think appropriate. Did you have any responsibility regarding the maintenance, condition and upkeep of the property at 316 Garrard Street, Covington, Kentucky?

A. Yes, I did.

Q. On or before October 15, 1983?

A. Yes, I did.

Q. If any of those things needed fixing up or care or treatment, you would do that, not your grandmother, or you would see to it being done. Correct?

A. I would have it taken care of.

. . . .

Q. And you would see to the maintenance and supervision and upkeep of the property?

A. Yes, sir.

We do not conclude from the testimony that there was a covenant to repair. We do however deduce from the foregoing that the issue was raised, and evidence was adduced to a level sufficient to withstand directed verdict on the issue of the existence of a covenant to repair. A motion for a directed verdict is to be considered in the strongest possible light in favor of the party opposing the motion, and a directed verdict should not be entered unless the evidence is not sufficient to sustain the verdict. *Spivey v. Sheeler*, Ky., 514 S.W.2d 667 (1974).

■ Yet even if there was a covenant to repair, according to the precedent of *Starns, supra,* Schneder was obliged to also show that the Erdmans had notice of the defect that caused her injury, in this case the loose railing. This is where we believe that appellant's case fails.

Mr. See's testimony included the following:

Q. Mr. See, you do not ever recall specifically complaining about the back porch or railing to Mr. Erdman, do you, sir?

A. That is correct.

Thus, the evidence shows that while See knew about the loose railing he never informed Erdman about the defective condition. Nunna See did not testify. Mr. Erdman's testimony included the following:

Q. What can you tell us about the rear porch?

A. I never noticed anything other than maybe one of the steps being a little loose, but I never noticed anything about it, no.

. . . .

Q. Did that alert you there might be other problems with the porch or rail?

A. No, sir.

The evidence also reveals that up to a short time prior to appellant's injury there were garbage cans kept on the porch next to the railing. This added to the difficulty of discovering that the railing was loose.

The defective condition of the railing was latent. Its instability could not have been seen; it would have had to be discovered by feeling it, or by the hard way appellant experienced. Erdman was not told of the defect and had no reason to suspect it.

■ Appellant urges that when Erdman discovered the loose step he was put on notice to search for other defects. This is reaching a bit too far we think. It takes more than a mere scintilla of evidence to overcome a motion for directed verdict. *James v. England*, Ky., 349 S.W.2d 359 (1961). The *Starns* rule talks in terms of knowledge of latent defects, not knowledge of a patent defect giving rise to constructive notice to search for latent defects. The latent defect must be known; it is not required by any precedent to be intuited.

■ We conclude with appellant's argument that the railing was a nuisance, bringing it within the *Starns* exception to the general rule. A nuisance, to be an exception, must be the result of defective construction. The evidence here shows, if anything, that the instability of the wooden railing was a result of natural weathering processes and wear and tear, and not defective construction.

The judgment of the Kenton Circuit Court is affirmed.

All concur.