RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0091p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

COGENT SOLUTIONS GROUP, LLC,

          *Plaintiff-Appellant*,

      *v.*

HYALOGIC, LLC,

          *Defendant-Appellee.*

No. 12-5493

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:11-cv-00124—Jennifer B. Coffman, Chief District Judge.

Argued: January 22, 2013

Decided and Filed: April 3, 2013

Before: MARTIN and ROGERS, Circuit Judges; TARNOW, District Judge.[*]

———————————

## COUNSEL

**ARGUED:** Trevor W. Wells, MILLER WELLS PLLC, Lexington, Kentucky, for Appellant. Bart L. Greenwald, FROST BROWN TODD LLC, Louisville, Kentucky, for Appellee. **ON BRIEF:** Trevor W. Wells, MILLER WELLS PLLC, Lexington, Kentucky, Jeffrey T. Peters, WEYLS PETERS, LLC, Independence, Ohio, for Appellant. Bart L. Greenwald, Jason P. Renzelmann, J. Kendrick Wells IV, FROST BROWN TODD LLC, Louisville, Kentucky, for Appellee.

———————————

## OPINION

———————————

TARNOW, District Judge. Plaintiff Cogent Solutions Group, LLC ("Cogent") brought suit against Defendant Hyalogic, LLC ("Hyalogic"), alleging that Hyalogic was

———

[*]The Honorable Arthur J. Tarnow, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

disseminating false information regarding Cogent's product Baxyl, an "oral, liquid HA supplement that is sold into the human natural products market." Shortly after the filing of the case, the parties entered into a settlement agreement. This appeal stems from Cogent's motion to enforce the settlement agreement. The district court, in a memorandum opinion, found no breach of the settlement agreement and denied Cogent's motion.

Cogent raises two arguments on appeal: First, that the district court erroneously interpreted the language of the settlement agreement. Second, that the district court's summary dismissal of the motion to enforce the settlement agreement was improper because of the existence of genuine issues of material fact.

For the following reasons, we **AFFIRM** the judgment of the district court.

## I. STATEMENT OF FACTS

On April 8, 2011, Cogent filed suit against Hyalogic and Hoppy & Company, Inc., two competitors in the "human natural products market."[1] Cogent alleged that its competitors had engaged in false advertising, unfair competition, deceptive trade practices, breach of contract, and fraud. All of these claims stemmed from alleged misrepresentations in the defendants' marketing and advertising of their dietary supplements containing "HA." "HA" stands for "Hyaluronic Acid," an ingredient in Cogent's dietary supplement "Baxyl" and Hyalogic's dietary supplement "Synthovial Seven." The thrust of Cogent's suit against Hyalogic involved the distribution by Hyalogic of a chart comparing certain properties of Synthovial Seven to Baxyl ("the Chart"). Cogent alleged that the Chart "contains numerous false and misleading representations," including the statement that preservatives contained in Baxyl cause the HA in the product to decay.

On April 29, 2011, the parties agreed to cancel the scheduled hearing on Cogent's motion for a preliminary injunction in anticipation of a settlement agreement.

---

[1]Hoppy is not a party to this appeal.

On June 9, 2011, the parties submitted a settlement agreement and stipulated order of dismissal. The district court maintained jurisdiction to enforce the settlement agreement.

On August 5, 2011, Cogent filed a motion to set aside the order dismissing the case, alleging that Hyalogic had breached the settlement agreement. On August 26, 2011, Cogent filed a motion to enforce the settlement agreement. On March 30, 2012, the district court denied Cogent's motion to enforce the settlement agreement. Cogent timely appealed on April 27, 2012.

### A. Relevant Provisions of the Settlement Agreement

The settlement agreement contains several provisions relevant to this appeal:

**Section 3.2 -** "The Parties expressly warrant, represent, and agree that they will not make false or misleading statements about the other Party's products."

**Section 3.3 -** "Hyalogic . . . shall not utilize [the Chart] or the characterization about Baxyl contained in the Chart in any future marketing and/or sales materials or information. Hyalogic will use its best efforts to retrieve and destroy all existing copies of the Chart. Hyalogic further agrees to remove the 'competitor line' from the graph on any future use in print or on the Internet with regard to any preservative-related graphs."

**Section 3.4** - "Hyalogic agrees that it will not state, nor cause others to state, that Baxyl contains preservatives that break down hyaluronan ('HA')."

**Section 8.1 -** "The Parties agree if it is ever proven, by clear and convincing evidence, that Hyalogic . . . knowingly used any of the following statements . . . (d) that the human body can only absorb 3 mg of HA or that the joints only need 3 mg of HA per day . . . in print for sales and/or marketing purposes after May 17, 2011, then the offending party shall be liable to [Cogent] in the amount of $5,000, per use, as liquidated damages."

**B. Alleged Breach of the Settlement Agreement**

In its motion to enforce the settlement agreement, Cogent alleged that Hyalogic "caused a video to be uploaded to YouTube" on June 13, 2011, entitled "Pure Hyaluronic Acid - Anti Aging.3gp," that made false and misleading statements "about Baxyl, although Hyalogic did not mention Baxyl by name." In the video, Dr. Karen Brown, Hyalogic's "Scientific Partner," states that "others use preservatives and fillers that break down the HA in their products . . . ." Cogent alleged that this statement violates Sections 3.2, 3.4, and 8.1 of the settlement agreement. Cogent does not appeal the denial of the motion to enforce the settlement agreement with respect to this video.[2]

Cogent next alleged that a second YouTube video, entitled "Hylaruonc [sic] Acid Story - Skin Care & Joint Supplements made with Hyaluronic Acid by Hyalogic," ("the YouTube video") also violates the settlement agreement. The video contains the statement that "while others use preservatives and fillers that break down the HA in their product, Hyalogic does not use any preservatives or fillers in order to retain the integrity and effectiveness . . . ." Cogent alleged that this statement violates Sections 3.2 and 3.4 of the settlement agreement. Cogent alleged that "[a]lthough Hyalogic was smart enough not to specifically identify Baxyl . . . it is obvious that Hyalogic is referring to [Cogent's] Baxyl."

Finally, Cogent alleged that Dr. Brown "has been traveling around the country, spreading more of the Hyalogic Falsities." Cogent alleged that Dr. Brown spoke at the Natural Products Association Midwest Trade Show in Columbus, Ohio on July 30, 2011 ("the Speech"). Cogent alleged that Dr. Brown "identified citric acid and potassium sorbate as preservatives that break down HA. She claimed that .1% of citric acid will degrade HA to zero over a 6-month period." Cogent alleged that "[t]his claim is false

---

[2]The fact that Cogent does not appeal this aspect of their motion is not clear from its brief because Cogent repeatedly quotes the video as an example of the breach of the settlement agreement and as a reason for this Court to reverse the district court. *See* Appellant's Br. at 4 ([Dr. Brown] made false and misleading statements about "the competition" or "competitors"), 14, 16, 18, 22, 35, 36 ("the competition"). Cogent explains that "occasional references to 'the competition' rhetoric found on the 'Pure Hyaluronic Acid' video appear . . . in Cogent's brief - but only because the 'competition' constituted the nexus of the *contextual factual dispute* in the district court in regard to whether . . . the veiled statements were actually 'about Baxyl.'" Appellant's Reply Br. at 7 (emphasis in original).

or at the very least misleading." Cogent did not allege that Dr. Brown made any claims specifically about Baxyl or other Cogent products during the speech.

## II. DISCUSSION

### A. Standard of Review

A settlement agreement is a type of contract and is governed "by reference to state substantive law governing contracts generally." *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992) (quoting *White Farm Equip. Co. v. Kupcho*, 792 F.2d 526, 529 (5th Cir. 1986)). In Kentucky "the interpretation of a contract, including determining whether a contract is ambiguous, is a question of law for the courts and is subject to *de novo* review." *Lexicon, Inc. v. Safeco Ins. Co. of Amer., Inc.*, 436 F.3d 662, 670 (6th Cir. 2006) (quoting *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2002)). A contract is ambiguous "if a reasonable person would find it susceptible to different or inconsistent interpretations." *Lexicon, Inc.*, 436 F.3d at 670 (quoting *Cantrell Supply, Inc.*, 94 S.W.3d at 385).

### B. District Court's Interpretation of Sections 3.2 and 3.4

Cogent argues that the district court erroneously interpreted Sections 3.2 and 3.4 of the settlement agreement.

Section 3.2 states that Cogent and Hyalogic will not "make false or misleading statements about the other Party's products." Cogent argues that the district court "read words into the contract" by requiring "direct" or "express" reference to Cogent's products. Cogent argues that a prohibition against misleading statements "about the other Party's products" is an ambiguous term requiring "reading of the contract as a whole" to determine meaning. Cogent further argues that the district court "rewrote" Section 3.4 by "adding quotation marks around the phrase . . . that do not appear in the parties' contract."

Section 3.4 states that Hyalogic will not claim "that Baxyl contains preservatives that break down hyaluronan ('HA')." Cogent urges this Court to find that Section 3.4

is ambiguous and could also prohibit "implicit" references that do not name Baxyl but that can be understood to refer to Baxyl.

The district court found that the language of Sections 3.2 and 3.4 was unambiguous in requiring a reference to "the other Party's products," or a statement "that Baxyl contains preservatives that break down hyaluronan ('HA')," respectively.

The district court also found that the statement in the YouTube Video that "while others use preservatives and fillers that break down the HA in their product, Hyalogic does not use any preservatives or fillers in order to retain the integrity and effectiveness . . . " was not a reference to "the other Party's products" and did not state "that Baxyl contains preservatives that break-down hyaluronan ('HA')."

Similarly, the district court found that statements made by Dr. Brown during the Speech regarding the effect of preservatives on HA did not refer to the "other party's products" and did not state "that Baxyl contains preservatives that break-down hyaluronan ('HA')."[3]

Accordingly, the district court found no breach of Sections 3.2 and 3.4.

### C. Analysis

As noted above, a contract is ambiguous "if a reasonable person would find it susceptible to different or inconsistent interpretations." If a contract is not ambiguous, it "will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 298 (Ky. 2010). Courts must interpret contracts "giving effect to all parts and every word in it if possible." *R&R Inc. of Louisville v. Commonwealth*, 2005 WL 626391, at *2 (Ky. Ct. App. 2005). In addition, "all words in a contract should be given some meaning and . . . where words are susceptible to two constructions, one of which gives them a real

---

[3]In its opinion the district court made reference to Dr. Brown referring to "competitors" at the Speech. However, it appears from the affidavit of an employee provided by Cogent that the "competitors" phrase was used in a video and not by Dr. Brown. Dr. Brown appears to have made no reference to "competitors," "Baxyl," or "others."

significance, while the other makes them meaningless, the former construction will be adopted." *McCullough v. Weller*, 290 S.W. 675, 676 (Ky. Ct. App. 1927).

### i. Section 3.2

Section 3.2 prohibits "false or misleading statements about the other Party's products." Section 3.2 does not prohibit, for example, false statements about "the effect of preservatives on HA" or "about supplements containing HA." Rather, a statement is prohibited if it is "about the other Party's products." Therefore, to constitute a breach of the settlement agreement, a statement must refer to the other Party's products. The statements that Cogent argues breach the settlement agreement are the statement in the YouTube video that "while others use preservatives and fillers that break down the HA in their product, Hyalogic does not use any preservatives or fillers in order to retain the integrity and effectiveness," and a general discussion by Dr. Brown regarding the effect of preservatives on HA. These are not statements "about" Cogent's products.

Cogent argues that the district court "supplemented" the contract by requiring that statements "about the other Party's products" be "express," "explicit," "direct," or "specific." Appellant's Br. at 28. Cogent argues that the term "about" is ambiguous, and can include statements that do not refer to Baxyl by name. Cogent cites the Oxford Dictionary definition of "about" as "in connection with, on the matter or subject of." *Id.* Cogent also cites Kentucky defamation cases that note that defamatory statements can be "about" a person without explicit reference if "it was so reasonably understood by plaintiff's friends and acquaintances . . . familiar with the incident." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 794 (Ky. 2004).

Hyalogic argues in response that the language of the contract is unambiguous. Hyalogic notes that Section 8.1 of the contract was drafted to prohibit Hyalogic from making specific statements whether or not those statements were about Baxyl or Cogent's products in general.[4] Thus, Hyalogic argues, Cogent could and did seek the

---

[4]For example, Hyalogic was prohibited from printing the statement that "the human body can only absorb 3 mg of HA or that the joints only need 3 mg of HA per day."

prohibition of specific statements, and could have sought a similar prohibition regarding statements about the effects of preservatives on HA.

Section 3.2 is unambiguous. Section 3.2 requires a clear statement "about the other Party's product." Statements that refer to preservatives that can be found in a number of products, including Cogent's products, are not statements "about the other Party's products."

### ii. Section 3.4

Section 3.4 states that Hyalogic "will not state, nor cause others to state, that Baxyl contains preservatives that break down hyaluronan ("HA"). The alleged breaches are a statement in the YouTube video that "while others use preservatives and fillers that break down the HA in their product, Hyalogic does not use any preservatives or fillers in order to retain the integrity and effectiveness," and a general discussion by Dr. Brown regarding the effect of certain preservatives on HA without reference to "others," "competitors," or Baxyl. The district court found that a reference to "others," and a general discussion of the effect of certain preservatives on HA, were not "direct" or "express" references to Baxyl and thus did not breach the settlement agreement.

Cogent argues that the district court "rewrote" Section 3.4 by "adding quotation marks around the phrase . . . that do not appear in the parties' contract." Cogent urges the Court to find that Section 3.4 is ambiguous and that it also prohibits "implicit" references that can be understood to refer to Baxyl. Cogent argues (without reference to evidence in the record) that there are "only three oral, liquid HA supplements for humans sold in the ***natural products market*** that contain trace amounts of citric acid and potassium sorbate as preservatives, and two of these three products are . . . sold by [Cogent]." Emphasis in original). Thus, according to Cogent, references to "others" using "preservatives or fillers" should have been interpreted by the district court as a reference to citric acid and potassium and its presence in Baxyl. Similarly, Cogent argues that Dr. Brown's statements about the effects of citric acid and potassium sorbate on HA, unconnected to any products, should be interpreted as referring to Baxyl.

Section 3.4 is unambiguous. Section 3.4 specifically prohibits Hyalogic from stating that *Baxyl* contains preservatives that break down HA. To reach the interpretation suggested by Cogent, the Court would have to read Section 3.4 as stating that Hyalogic "will not state, nor cause others to state, that preservatives break down hyaluronan ("HA")," eliminating the specific mention of Baxyl in the language of the settlement agreement. We decline to violate a central tenet of contract law, that a court should strive to give meaning to all the words in a contract.

## III. CONCLUSION

For the reasons stated above, Sections 3.2 and 3.4 of the settlement agreement are unambiguous, and we AFFIRM the district court's denial of Cogent's Motion to Enforce the Settlement Agreement. Because the settlement agreement is unambiguous, we do not reach Cogent's second argument regarding the existence of genuine issues of material fact related to interpretation of the settlement agreement terms.