NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0034n.06

No. 14-5195

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| AUTO CLUB PROPERTY-CASUALTY INSURANCE COMPANY, | ) ) ) ) | **FILED** Jan 12, 2015 DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| B.T., by and through his parent and next friend Shelita Thomas, | ) ) ) | COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| Defendant-Appellant. | ) ) | |

BEFORE:    BATCHELDER, GILMAN, GIBBONS, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge.   Auto Club Property-Casualty Insurance Company sought a declaration that it is not liable to defend or indemnify insured parties after a firework struck B.T. in the eye as a result of the insured parties' alleged negligence.  The district court granted summary judgment in Auto Club's favor, holding that the policy specifically excluded payment for the injury suffered in this case.  For the following reasons, we reverse.

I.

On July 5, 2010, ten-year-old B.T. was playing with other children at Brad and Melissa Cambron's house in Louisville, Kentucky.  The Cambrons' eight-year-old son, D.C., asked Brad if he could play with the sparklers that were in Brad's truck.  Brad agreed and unlocked the truck

from the house with his keyless remote. After D.C. returned outside, Brad did not supervise the children's activities.

When D.C. and the other children opened the truck, they saw a number of bottle rockets. The bottle rockets and sparklers—which Brad had recently bought in Indiana—remained in the truck following the Cambrons' family Fourth of July celebrations. The children removed some sparklers, some bottle rockets, and a lighter from the truck. Some of the children then ignited a number of the bottle rockets. At one point, a child identified as J.J. lit the fuse of a bottle rocket while B.T. was standing near the garage door. Before exploding, the rocket struck B.T.'s left eye. The resulting injuries required medical treatment, including surgery.

B.T. sought damages for his injuries in a suit in Kentucky state court against Brad and Melissa Cambron, D.C., and J.J. Among the causes of action were negligence claims against all four defendants and claims against Brad and Melissa for negligent entrustment and negligent supervision. The state court action remains pending.

The Cambrons sought defense and indemnification under a homeowners' insurance policy issued by Auto Club for the period March 3, 2010 to March 3, 2011. The policy provided liability coverage for Melissa and Brad (who were listed on the policy's Declaration Certificate), and also D.C. (because he was a "resident relative," and is therefore defined as an "Insured Person" under the plan).

Auto Club then brought this declaratory judgment action in the Western District of Kentucky, seeking a declaration that it has no duty to defend or indemnify the Cambrons. In addition to Brad and Melissa Cambron, the suit named B.T. and J.J. as defendants. Auto Club claimed that the events of July 5, 2010, fell within four specific exclusions in the policy. First, Auto Club pointed to a provision excluding coverage for criminal acts (the "Criminal-Act

Exclusion"), and claimed that the Cambrons and J.J. committed criminal acts by possessing and using the bottle rockets without a license. Second, the policy contains an exclusion for conduct intended to or reasonably expected to cause injury (the "Intentional-Act Exclusion"), and Auto Club argued that allowing access to the bottle rockets would be reasonably expected to cause injury. Third, Auto Club claimed that Brad and Melissa's failure to supervise the children fell within the policy's "Negligent-Supervision Exclusion." Finally, the company argued that the "Negligent-Entrustment Exclusion" applied because Brad and Melissa Cambron negligently entrusted the fireworks to the children.

The parties filed cross-motions for summary judgment and the district court granted summary judgment in Auto Club's favor. The court found that the Cambrons' possession of the bottle rockets and J.J.'s use or explosion of the bottle rocket each constituted a "criminal act" within the meaning of the Criminal-Act Exclusion. As a result, the court held that Auto Club has no obligation to defend or indemnify the Cambrons. Having found coverage barred under the Criminal-Act Exclusion, the court found it unnecessary to determine whether the other three exclusions applied. B.T. timely appealed.

II.

A.

This court reviews a district court's grant of summary judgment *de novo*. *Keith v. Cnty. of Oakland,* 703 F.3d 918, 923 (6th Cir. 2013). Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, we construe all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

B.

We must first interpret the scope of the exclusions in the Cambrons' insurance policy. That task—as both parties agree—is governed by Kentucky law. Terms of an insurance policy are given their plain and ordinary meaning and, when the terms are clear and unambiguous, must be enforced as drafted. *Crutchfield v. Transamerica Occidental Life Ins. Co.*, 527 F. App'x 339, 342 (6th Cir. 2013) (citing *City of Louisville v. McDonald*, 819 S.W.2d 319, 320–21 (Ky. Ct. App. 1991)). Whether a term is ambiguous is a question of law. *Cogent Solutions Group, LLC v. Hyalogic, LLC*, 712 F.3d 305, 310 (6th Cir. 2013) (citing *Cantrell Supply, Inc. v. Safeco Ins. Co. of Am., Inc.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2002)). A contract is ambiguous "if a reasonable person would find it susceptible to different or inconsistent interpretations." *Lexicon, Inc. v. Safeco Ins. Co. of Am., Inc.*, 436 F.3d 662, 670 (6th Cir. 2006) (quoting *Cantrell*, 94 S.W.3d at 662).

When the terms are ambiguous, Kentucky's reasonable-expectations doctrine applies: the court interprets the terms "in favor of the insured's reasonable expectations and construe[s] [them] as an average person would construe them." *Crutchfield*, 527 F. App'x at 342 (citing *Hugenberg v. W. Am. Ins. Co.*, 249 S.W.3d 174, 185–86 (Ky. Ct. App. 2006)). In other words, "the insured is entitled to all the coverage he may reasonably expect to be provided under the policy." *Wolford v. Wolford*, 662 S.W.2d 835, 838 (Ky. 1984). "Only an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat that expectation." *Id.* at 838–39.

The reasonable-expectations doctrine complements Kentucky's public policy favoring broad coverage in insurance contracts. When the terms of the contract are ambiguous, any exclusions should be read to give maximum coverage, with any doubts resolved in the insured's

favor. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 564 (6th Cir. 2008) (citing *Dowell v. Safe Auto Ins. Co.*, 208 S.W.3d 872, 878 (Ky. 2006); *St. Paul Fire & Marine Ins. Co. v. Powell–Walton–Milward, Inc.*, 870 S.W.2d 223, 227 (Ky. 1994); *K.M.R. v. Foremost Ins. Group*, 171 S.W.3d 751, 753 (Ky. Ct. App. 2005)).

C.

The Cambrons' policy contained the following exclusion:

> Under Part II, *we* will not cover:
> …
> 10. *bodily injury* or *property damage* resulting from:
> > a. a criminal act or omission committed by anyone; or
> > b. an act or omission, criminal in nature, committed by an *insured person* even if the *insured person* lacked the mental capacity to:
> > > (1) appreciate the criminal nature or wrongfulness of the act or omission; or
> > > (2) conform his or her conduct to the requirements of the law; or
> > > (3) form the necessary intent under the law.
>
> This exclusion will apply whether or not anyone, including the *insured person*:
> > a. is charged with a crime;
> > b. is convicted of a crime whether by a court, jury or plea of nolo contendere; or
> > c. enters a plea of guilty whether or not accepted by the court . . . .

We must first determine whether the exclusion was ambiguous. In making this inquiry, this court must apply Kentucky law in accordance with the controlling decisions of the Supreme Court of Kentucky. *OneBeacon Am. Ins. Co. v. Am. Motorists Ins. Co.*, 679 F.3d 456, 460 (6th Cir. 2012) (citing *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). This court's own prior published decisions interpreting Kentucky law are also controlling, unless Kentucky law "has measurably changed in the meantime." *Rutherford v.*

*Columbia Gas*, 575 F.3d 616, 619 (6th Cir. 2009) (quoting *Big Lots Stores, Inc. v. Luv N' Care, Ltd.*, 302 F. App'x 423, 427 (6th Cir. 2008)).

Controlling precedent establishes that the Criminal-Act Exclusion in the Cambrons' policy does not exclude coverage for the events of July 5, 2010. First, the language of the exclusion is ambiguous. In *Healthwise of Kentucky, Ltd. v. Anglin*, 956 S.W.2d 213 (Ky. 1997), the Supreme Court of Kentucky held that an exclusion for "losses suffered . . . while committing . . . a crime" was ambiguous. *Id.* at 216. Even though the court hypothesized that the average person would likely view the relevant conduct—drag racing—as criminal, the exclusion was still ambiguous because it was susceptible to more than one reasonable interpretation. *Id.* at 216. Similarly, in *American Family Life Assurance Co. v. Bilyeu*, 921 F.2d 87 (6th Cir. 1990), this court found ambiguity in an exclusion for injuries that occurred "during the commission of a crime" when seeking to determine whether the policy covered injuries sustained while drunk driving. *Id.* at 89–90. In both of these controlling cases, the exclusion for "crimes" or "criminal acts" was ambiguous when applied to particular acts that were not quintessentially criminal. The Cambrons' policy contains exclusions for "a criminal act or omission" and "an act or omission, criminal in nature." If this language is ambiguous when applied to drag racing and drunk driving, it is also ambiguous when applied to possessing and igniting fireworks without a license. There are at least two reasonable interpretations of the exclusion in this situation, one covering injuries and one excluding coverage for injuries. Just like in *Anglin* and *Bilyeu*, the Cambrons' exclusion is ambiguous.

Next, we must determine whether, under Kentucky's reasonable expectations doctrine, the Cambrons may reasonably expect coverage for the events of July 5. Again, precedent dictates the outcome. In *Bilyeu*, the insured was driving while intoxicated when he crashed and

died. *Id.* at 88. The company that issued his life insurance policy refused to pay benefits on the ground that the accident occurred "during the commission of a crime." *Id.* This court held that the insured would not have reasonably expected an accident to be excluded from coverage simply because it occurred while drunk driving. *Id.* at 89. This court agreed with the district court that an insured, reading the term "crime" in a policy exclusion, "is more likely to understand it to mean[,] for example[,] burglary, armed robbery, or murder than for it to mean drunk driving." *Id.* at 89 (alterations in original). As a result, the exclusion could not serve as a basis for the denial of coverage. *Id.* at 90.

Similarly, here, the Cambrons would have reasonably expected to be covered for injuries resulting from their possession of the bottle rockets, despite the Criminal-Act Exclusion. The Cambrons allegedly committed the offense of possessing fireworks without a license, and J.J. the offense of using or exploding a firework without a license, in violation of the then-existing versions of Kentucky Revised Statutes ("KRS") sections 227.702, 227.708, and 227.710. These are types of conduct that an insured person, reading the policy, would reasonably believe were covered. They are far from the core criminal offenses—burglary, armed robbery, and murder— that an insured, according to the *Bilyeu* court, would believe to be within the exclusion. *Bilyeu*, 921 F.2d at 89.

This does not mean that the Criminal-Act Exclusion only excludes burglary, armed robbery, and murder. But Kentucky favors interpreting ambiguous terms in a way that provides maximum coverage, *see Flowers*, 513 F.3d at 564, and requires exclusions from coverage to be "unequivocally conspicuous, plain and clear." *Wolford*, 662 S.W.2d at 838–39. It is unclear that the unlicensed possessing or exploding of fireworks falls within the exclusion in the Cambrons' policy.

The district court declined to follow *Anglin* and *Bilyeu*, finding neither "applicable to the facts of the case at bar." However, each of the four bases on which the district court distinguished those cases is unavailing. First, the court stated that "[t]hose cases involved [employee health] and accidental death policies [respectively], as opposed to homeowner's insurance policies." The method of interpreting the exclusion in the Cambrons' policy is not reserved for homeowners' policies. While the type of policy may be relevant in analyzing ambiguity and reasonable expectations in a particular case, *Bilyeu* and *Anglin* both focused on the ambiguity of excluding coverage for damage sustained during the commission of a "crime" in a policy issued to an individual consumer. *Bilyeu*, 921 F.2d at 89–90; *Anglin*, 956 S.W.2d at 216. *Bilyeu* also ruled that such a consumer would reasonably expect coverage when engaging in conduct that does not fall within the scope of crimes such as burglary, robbery, or murder. *Bilyeu*, 921 F.2d at 89. Nothing about these analyses suggests that the Cambrons' Criminal-Act Exclusion is any less ambiguous because it is in a homeowners' policy rather than a medical or life insurance policy. Nor do these prior opinions indicate that the insureds' reasonable expectations regarding an exclusion for crimes would be any different in the contexts of medical or life insurance than in the context of homeowners' insurance. The district court did not offer, and we cannot find, any reasoned bases to analyze these exclusions differently.

Second, the district court noted that the exclusions in the prior cases excluded coverage "if the insured 'committed' a crime." There is no material difference in the language of the exclusions. The *Anglin* and *Bilyeu* decisions focused on the ambiguity of the word "crime" within those policies, and the reasonable expectations that the word creates. *Bilyeu*, 921 F.2d at 89–90; *Anglin*, 956 S.W.2d at 216–17. The Cambrons' policy excludes coverage for "a criminal act or omission" or "an act or omission, criminal in nature." The same ambiguity exists and the

Cambrons' reasonable expectations will be no different from the insured parties in *Anglin* and *Bilyeu*.

Third, the district court explained that "in both cases the insured was alleged to have violated traffic regulations by driving under the influence of alcohol and drag racing, respectively," and "such violations are specifically excluded from the . . . Penal Code's definition of 'crime.'" This improperly characterizes the *Bilyeu* opinion, which concedes that "drunk driving appears to be a crime in Kentucky." *Bilyeu*, 921 F.2d at 87. This is consistent with other authority, which recognizes drunk driving as a crime rather than a mere traffic infraction. *See* KRS § 189A.010(5) (providing, consistently with the version in force on July 5, 2010, for fines and imprisonment for the first three drunk-driving offenses, and designating the fourth offense as a felony); *see also Heath v. Commonwealth*, 761 S.W.2d 630, 630–31 (Ky. 1988) (referring to "the crime of drunk driving"); *Keller v. Commonwealth*, 719 S.W.2d 5, 6 (Ky. Ct. App. 1986) (same). Although the *Bilyeu* court treated drunk driving as a crime, the court still found the word "crime" ambiguous and decided that the insured would have reasonably expected to have been covered for injuries suffered while driving drunk. *Bilyeu*, 921 F.2d at 89.

The ambiguity and reasonable-expectation inquiries do not focus solely on the definition of "crime" in the Penal Code. If there is more than one reasonable interpretation, the reasonable-expectations doctrine applies and, if in doubt, "the interpretation favorable to the insured is adopted." *Anglin*, 956 S.W.2d 213 (citing *St. Paul Fire & Marine Insurance Co. v. Powell–Walton–Millward, Inc.*, 870 S.W.2d 223, 226 (Ky. 1994)). Whether or not the Cambrons and J.J. committed "crimes," this does not detract from the ambiguity of the exclusion or the Cambrons' reasonable expectation of being covered for injuries caused by the fireworks.

Finally, the district court explained that *Anglin* and *Bilyeu* do not control because "when confronted with language identical to that used in the Cambrons' Policy, courts in other jurisdictions found such language to be unambiguous." Kentucky law governs in this case and thus these decisions are inapposite. *Anglin* and *Bilyeu* are controlling, no matter how they compare to decisions from other jurisdictions. Controlling precedent leads to the conclusion that the Criminal-Act Exclusion does not provide a basis for denying coverage for the injuries that B.T. suffered on July 5, 2010.

### D.

The district court did not address the remaining exclusions in the Cambrons' policy and neither party briefed the issue of whether any other exclusion applies. Nonetheless, this court can affirm a district court's grant of summary judgment on any basis supported by the record. *EA Management v. JP Morgan Chase Bank, N.A.*, 655 F.3d 573, 575 (6th Cir. 2011). Here, the Intentional-Act, Negligent-Entrustment, and Negligent-Supervision Exclusions appear, at first glance, to be potentially applicable. However, further scrutiny demonstrates that genuine issues of material fact remain as to each of the three exclusions. Summary judgment on any of these bases would therefore be inappropriate.

The applicability of an exclusion in the specific circumstances of a case is a question of fact. *See James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 276–77 (Ky. 1991). In particular, issues related to the insured's state of mind are questions of fact. *Id.* at 276 ("The determination of whether an insured expected or intended the damage resulting in the claim is for the jury."). Thus, these questions are not generally appropriate for summary judgment. *See Kennedy v. City of Villa Hills*, 635 F.3d 210, 218 (6th Cir. 2011) ("[C]laims involving proof of a defendant's intent seldom lend themselves to summary

disposition."). They may be resolved on summary judgment only "when the evidence is 'so one-sided that no reasonable person could decide the contrary.'" *See In re Classic Star Mare Lease Program*, 727 F.3d 473, 484 (6th Cir. 2013) (quoting *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 819 (6th Cir. 1999). That is not the case here.

First, the Intentional-Acts Exclusion applies if the injury results "from an act or omission by an insured person which is intended or could reasonably be expected to cause bodily injury or property damage." Auto Club does not allege that Brad Cambron intended the injury to B.T, but it does claim that, by granting the children access to the truck and failing to supervise them, his acts or omissions could reasonably be expected to cause injury to B.T. However, viewed in the light most favorable to the nonmoving parties, Brad Cambron could reasonably expect that the children would be safe because they did not have permission to access the bottle rockets. Given this genuine issue of material fact, summary judgment cannot be granted on the basis of the Intentional-Act Exclusion.

Next, the Negligent-Entrustment and Negligent-Supervision Exclusions are respectively triggered when injury results "out of negligent entrustment by any insured person of any . . . object, instrument or device," or "out of negligent supervision by any insured person." These conditions are not sufficient, however. These two exclusions only exclude coverage when the conduct of those who are negligently entrusted or negligently supervised:

> a. is not an ***occurrence*** under Part II of this Policy; or
> b. is an intentional or criminal act excluded from coverage under Part II of this Policy . . . .

An "occurrence" means an "accident," which in turn is defined as "a fortuitous event that is neither reasonably anticipated nor reasonably foreseen from the standpoint of both any *insured person* and any person suffering injury or damages as a result."

Genuine issues of fact remain as to whether Brad Cambron—the insured—was negligent in his supervision of the children, or his entrustment of his car keys to D.C. The evidence is certainly not so one-sided as to necessitate judgment in Auto Club's favor. No Kentucky case holds that facts similar to these establish negligence as a matter of law. Perhaps the closest analog is *Spivey v. Sheeler*, 514 S.W.2d 667, 671 (Ky. Ct. App. 1974), in which the Kentucky Court of Appeals held that a genuine issue of fact remained in determining whether parents were negligent by allowing their son access to a loaded pistol. The court quoted approvingly from the American Law Reports:

> Evidence that defendant left a loaded gun in a place which he knew or should have known to be accessible to a child too immature or indiscreet to exercise the required care in the control of such an instrument, has frequently been held to raise a jury question as to defendant's responsibility for injuries caused by a child with a gun so left.

*Spivey*, 514 S.W.2d at 671 (quoting 68 A.L.R.2d 785). Although Kentucky courts have not directly addressed the question of whether it may be negligent as a matter of law to allow children access to fireworks, the principle related to loaded firearms would seem to apply equally here. Like guns, fireworks have the potential to cause serious injuries if entrusted to children, or if children are left unsupervised around them. And yet, neither *Spivey* nor any other Kentucky case contemplates that leaving guns, fireworks or other similar dangerous articles is negligent as a matter of law. A reasonable jury could find that Brad Cambron was negligent. Given this genuine issue of material fact, summary judgment on the Negligent-Entrustment and Negligent-Supervision Exclusions would be inappropriate.

Moreover, genuine issues of material fact remain as to the other prerequisite for the application of the Negligent-Entrustment and Negligent-Supervision Exclusions: whether the accident was reasonably anticipated or reasonably foreseen from the perspective of Brad,

Melissa, D.C., or B.T. It would be reasonable to conclude that the incident was not reasonably foreseen or anticipated from some or all of these individuals' perspectives.

Although the district court did not address the Intentional-Act, Negligent-Entrustment, and Negligent-Supervision Exclusions, our analysis reveals that it would not have been appropriate to grant summary judgment on any of these bases. We therefore remand these issues to the district court for trial.

III.

For the above reasons, we reverse the district court's grant of summary judgment and remand to the district court for further proceedings consistent with this opinion.

**ALICE M. BATCHELDER, Circuit Judge, dissenting.**  My agreement with the majority begins—and ends—with its holding that, under Kentucky law, the Criminal-Act Exclusion in the Cambrons' policy is ambiguous.  A finding of ambiguity requires that we then use the definition of the ambiguous term most likely to effect coverage, provided the definition is a reasonable one.  Instead of choosing among reasonable definitions, however, the majority invokes the "reasonable expectations of the insured" doctrine, concluding that "here, the Cambrons would have reasonably expected to be covered for injuries resulting from their possession of the bottle rockets, despite the Criminal-Act Exclusion."  Maj. Op. 7.  The closest the majority comes to saying what the term "criminal act" actually means is that it encompasses only "core criminal offenses."  *Ibid.*

Even if we use the definition of "criminal act" most favorable to the insured, J.J. committed a "criminal act."  The majority tries to escape this conclusion by obscuring the relevant "act," borrowing from—but not applying—the definition of "criminal act" in Kentucky Revised Statutes Annotated §§ 216.710 and 500.080.  Instead, the majority looks to *American Family Life Assurance Co. v. Bilyeu*, 921 F.2d 87 (6th Cir. 1990).  But even under *Bilyeu*, the Criminal-Act Exclusion is triggered because the record shows that J.J. deliberately set off the firework that injured B.T.

The Criminal-Act Exclusion is one of four potentially applicable exclusions.  Because the district court held that it applies here, the district court found it unnecessary to address the other three.  After reversing on the Criminal-Act Exclusion, the majority holds that summary judgment for the insurer is also inappropriate on the other three exclusions, and thus the case should be remanded for trial.  Despite acknowledging that the applicability of exclusions in insurance policies is a fact-intensive inquiry, the majority decides the exclusions are not applicable,

without the district court's having developed the appropriate facts and without the parties' having briefed the issues on appeal. I would affirm the district court's granting of summary judgment to the insurer because the Criminal-Acts Exclusion applies here. But we should at very least afford the district court the first opportunity to decide whether the Intentional-Acts, Negligent-Entrustment, and Negligent-Supervision Exclusions apply.

## I.

### A.

At the outset I would note that there is some confusion over when recourse to the "reasonable expectations of the insured" doctrine is appropriate under Kentucky law. The majority says that "[w]hen the terms are ambiguous, Kentucky's reasonable-expectations doctrine applies." Maj. Op. 4. Some cases agree. *See, e.g.*, *Hugenberg v. W. Am. Ins. Co./Ohio Cas. Grp.*, 249 S.W.3d 174, 185 (Ky. Ct. App. 2006) ("Under the reasonable expectation doctrine, ambiguous terms in an insurance contract must be interpreted in favor of the insured's reasonable expectations and construed as an average person would construe them."). But the Kentucky Supreme Court has said instead that the doctrine is integral to a threshold inquiry, "[a]n essential tool in deciding *whether* an insurance policy is ambiguous, and consequently should be interpreted in favor of the insured . . . ." *Simon v. Cont'l Ins. Co.*, 724 S.W.2d 210, 212 (Ky. 1986) (emphasis added). But here there is no debate about whether the policy is ambiguous; the "reasonable expectations" doctrine is irrelevant.

Once we find a term in an insurance contract ambiguous, we use the definition of the term most favorable to the insured—the definition most likely to effect coverage. A cardinal principle of Kentucky insurance law is that "[w]here an exclusion is susceptible to two reasonable interpretations, the interpretation favorable to the insured is adopted." *St. Paul Fire*

*& Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226 (Ky. 1994).  I have no disagreement with the majority opinion and other courts to the extent they use the "reasonable expectations" doctrine as a proxy for "reasonableness" in narrowing the scope of potentially applicable definitions of an ambiguous term.

But the majority instead invokes the "reasonable expectations" doctrine to avoid defining "criminal act."  To be fair, we did something similar in *American Family Life Assurance Co. v. Bilyeu*, 921 F.2d 87 (6th Cir. 1990), where we held that the insured "would not have thought that accidents that occurred while under the influence of alcohol were excluded from coverage as a result of" an exclusion for criminal acts because "the insured is more likely to understand it to mean[,] for example[,] burglary, armed robbery, or murder than for it to mean drunk driving." 921 F.2d at 89 (internal quotation marks omitted).  The majority here is confident that J.J.'s use and setting off of a firework and the Cambrons' possession of fireworks are the "types of conduct that an insured person, reading the policy, would reasonably believe were covered. They are far from the core criminal offenses—burglary, armed robbery, and murder—that an insured, according to the *Bilyeu* court, would believe to be within the exclusion."  Maj. Op. 7–8.  Although one could read the majority opinion as defining "criminal act" in the negative (in other words, the exclusion is not triggered because the acts did not involve burglary, armed robbery, or murder), the majority then admits that *Bilyeu* "does not mean that the Criminal-Act Exclusion only excludes burglary, armed robbery, and murder."  Maj. Op. 8.  But what then does it mean?

The majority never tells us, reasoning that the "reasonable expectations" doctrine requires a finding of coverage even though the majority does not decide what the term "criminal act" actually means.  This may have worked in *Bilyeu* where drunk driving was "far from the core criminal offenses," but surely the deliberate exploding of a firework with people nearby is not as

"far from the core criminal offenses" as drunk driving is. After all, "driving" is rather a core life activity, and one for which in most states, drivers are required to obtain insurance. It is perhaps reasonable that the average driver would expect that all of his driving, even driving while drunk, illegal though it may be, is within the coverage of that insurance. But would the average homeowner really expect that his homeowner's policy, that contains an exclusion for criminal acts, would cover injury resulting from the illegal possession, use, and explosion of fireworks purchased out-of-state? Without a definition of "criminal act," it is impossible to determine whether J.J.'s and the Cambrons' conduct is closer to drunk driving or to the "core criminal offenses."

**B.**

Even using the definition of "criminal act" most favorable to the insureds, J.J. committed a "criminal act" and the exclusion is triggered. There are four definitions of "criminal act" offered by the parties. B.T. points to two definitions contained in the Kentucky Revised Statutes, the first defining "crime" for campus safety and security purposes, Ky. Rev. Stat. Ann. § 164.948(3), and the second defining "crime" for health facilities and services purposes, Ky. Rev. Stat. Ann. § 216.710(3). Both definitions would effect coverage, but we should apply neither. Although a definition need not be contained in a statute or dictionary for us to use it in interpreting an insurance policy, the definition must at least be reasonable. *See St. Paul Fire & Marine Ins. Co.*, 870 S.W.2d at 227 ("As long as coverage is available under a reasonable interpretation of an ambiguous clause, the insurer should not escape liability . . . ."). It is unreasonable to use these definitions here because they are context-specific definitions exported from portions of the Kentucky Revised Statutes unrelated to the facts of this case. Section 216.710, for instance, would require a conviction or guilty plea before finding that a "criminal

act" has occurred, while excluding from the definition's ambit such quintessentially criminal acts as murder or arson.

A third definition offered by B.T. is the Kentucky Penal Code's definition of "crime" as "a misdemeanor or a felony." Ky. Rev. Stat. Ann. § 500.080(2).[1] A misdemeanor, in turn, is defined as "an offense, other than a traffic infraction, for which a sentence to a term of imprisonment of not more than twelve (12) months can be imposed." *Id.* § 500.080(10). And "offense" means "conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state." *Id.* § 500.080(11).

One who violates § 227.710's prohibition on the "use" or possession of fireworks "shall be fined not more than one thousand dollars ($1,000), or imprisoned in the county jail for not more than thirty (30) days, or both." *Id.* § 227.990(4). This "offense" is not a traffic infraction, and a term of imprisonment of thirty days "can be imposed." B.T. responds that neither the statute prohibiting the possession or use of fireworks nor the statute penalizing such activity is part of the Penal Code. Def.'s Br. 13. Section 532.020(3) makes clear, however, that an offense located elsewhere in the Kentucky Revised Statutes may still be criminal in nature: "Any offense defined outside this code for which a law outside this code provides a sentence to a definite term of imprisonment with a maximum of less than ninety (90) days shall be deemed a Class B misdemeanor." Accordingly, possession or use of fireworks is a "misdemeanor" and thus a "crime" under § 500.080(2). Under this definition, both J.J. and the Cambrons committed a "criminal act."

---

[1] Although the Kentucky Supreme Court in *Healthwise of Ky., Ltd. v. Anglin* adopted the Penal Code definition of "crime," it did so because it was the interpretation "favorable to the insured." 956 S.W.2d 213, 216 (Ky. 1997); *see also id.* ("We therefore adopt Anglin's definition of 'crime' as the correct definition."). *Anglin* does not mandate a specific definition.

The last definition suggested by B.T. is the one we used in *Bilyeu*. We said that "the insured is more likely to understand ["crime"] to mean[,] for example[,] burglary, armed robbery, or murder than for it to mean drunk driving." 921 F.2d at 89. *Bilyeu*, by prefacing its enumerated list of "crimes" with "for example," tells us that the Criminal-Act Exclusion here encompasses more than burglary, armed robbery, and murder. Drunk driving is, in the majority's parlance, "far from the core criminal offenses," Maj. Op. 7, of burglary, armed robbery and murder, presumably because the former does not exhibit the deliberate conduct indicative of the latter. Reading *Bilyeu* as defining "criminal act" in this way, when "J.J. lit the fuse of a bottle rocket" with B.T. nearby, Maj. Op. 2, he committed a "criminal act" within the meaning of the Exclusion because he engaged in a deliberate act that posed a serious potential risk of injury to persons or property.

## C.

The majority characterizes the illegal actions of J.J. and the Cambrons thus: "The Cambrons allegedly committed the offense of possessing fireworks *without a license*, and J.J. the offense of using or exploding a firework *without a license* . . . ." Maj. Op. 7 (emphasis added). The error in the majority's approach lies in its failure to recognize that the prohibition codified in § 227.710 is the *possession, explosion, and use* of fireworks. That section contains some specific exceptions to these prohibitions, including an exception for licensed fireworks displays, but the prohibited conduct is the possession, explosion, and use of the fireworks. And because this activity violates § 227.710, it is a "criminal act" under § 500.080(2). Both the Cambrons (by possessing) and J.J. (by using and exploding) fireworks committed criminal acts under Kentucky's statutes.

And J.J. and the Cambrons committed criminal acts even if, as the majority believes, the criminal act is the possession, use, or explosion of fireworks without a permit. Neither J.J. nor the Cambrons had any kind of permit to do anything with fireworks. Neither took the precautions that the statute requires permit holders to take to prevent injury from the fireworks. Acting without a permit could well have "resulted in" B.T.'s injury because the permit required the holder to be competent and to take safety precautions.

Regardless of which definition we use, summary judgment is warranted because J.J. deliberately set off a firework, a "criminal act" under both § 227.710 and *Bilyeu*.

## II.

Beyond reversing the district court on the one potentially applicable exclusion the district court actually addressed, the majority holds that summary judgment for the insurer is also inappropriate on the Intentional-Act, Negligent-Entrustment, and Negligent-Supervision Exclusions. In the majority's words, the district "court found it unnecessary to determine whether the other three exclusions applied." Maj. Op. 3. Nor were these three exclusions briefed on appeal by either party.

"As a general rule, appellate courts do not consider any issue not passed upon below." *In re Morris*, 260 F.3d 654, 663 (6th Cir. 2001). While *Morris* is often cited in cases involving waiver, it is equally applicable here. Although some "circumstances [] justify departure from the general rule," *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 726 F.3d 767, 783 (6th Cir. 2013) (Griffin, J., dissenting), *reh'g en banc granted*, *vacated* (Nov. 8, 2013), *reh'g en banc*, 751 F.3d 427 (6th Cir. 2014), none warrants a departure from this general rule here. First, the issues have not been "presented with sufficient clarity." *Ibid.* To meet this exception, we have

required that "[b]oth parties have extensively briefed the issues at stake." *United States v. Pickett*, 941 F.2d 411, 415 (6th Cir. 1991); *see also Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446 (6th Cir. 2012) (holding that the issue was "presented with sufficient clarity and completeness" where both parties "fully briefed" the issue on appeal). Neither party in this case has addressed these three other exclusions in their appellate briefing. *See* Pl.'s Br. 14; Def.'s Br. 26.

Second, the issues involved are not "wholly legal." *Pickett*, 941 F.2d at 415. As the Ninth Circuit has noted, affirming the district court on an alternative basis is only appropriate where the record is adequate and the issues involved are purely legal. *Golden Nugget, Inc. v. Am. Stock Exch., Inc.*, 828 F.2d 586, 590 (9th Cir. 1987). The majority describes as "a question of fact" "[t]he applicability of an exclusion in the specific circumstances of a case." Maj. Op. 11. "[I]ssues related to the insured's state of mind" are also questions of fact. *Ibid.* While questions of fact do not preclude summary judgment where "the evidence is so one-sided that no reasonable person could decide the contrary," *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 484 (6th Cir. 2013) (internal quotation marks omitted), granting summary judgment on an alternative basis is inappropriate where further factual development may be necessary. *See City of Pontiac Retired Emps. Ass'n*, 726 F.3d at 783 (Griffin, J., dissenting); *Golden Nugget, Inc.*, 828 F.2d at 590.

The majority's merits analysis is a case in point. The majority analyzes only the Cambrons' actions under the Intentional-Acts Exclusion, even though J.J.'s setting off of a firework "could reasonably be expected to cause bodily injury." Maj. Op. 11. The majority holds that summary judgment would be inappropriate under the Negligent-Entrustment and Negligent-Supervision Exclusions on the basis of *Spivey v. Sheeler*, even though *Spivey* involved

injuries that occurred after an eleven-year-old boy climbed up on something, found the key to his parent's gun safe, unlocked the safe, and then discharged a weapon, all when his parents were away. 514 S.W.2d 667, 669 (Ky. 1974). Here, by contrast, Brad Cambron unlocked the vehicle from which J.J. retrieved the fireworks, despite knowing that the fireworks were in the vehicle. While the fact-intensive nature of this inquiry may make summary judgment unlikely, we ought not deny summary judgment upon the "further scrutiny," Maj. Op. 11, of issues the district court never scrutinized in the first place.

I respectfully dissent.