NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0181n.06

No. 19-5948

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ST. PAUL GUARDIAN INSURANCE COMPANY; PHOENIX INSURANCE CO.; TRAVELERS INDEMNITY COMPANY OF AMERICA, | ) ) ) ) | **FILED** |
| | ) | Mar 30, 2020 |
| Plaintiffs-Appellees, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF NEWPORT, KY; MARK BRANDT; NORM WAGNER; PAT MOORE; HOWARD NIEMEIER; SARAH TOLLE, fka Sarah Desentz; SERGEANT ROBERT BRADFORD; LIEUTENANT TOM FROMME; RICK SEARS, | ) ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendants-Appellants, | ) | |
| | ) | |
| | ) | |
| WILLIAM R. VIRGIL; LIEUTENANT COLONEL KEN PAGE, | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Before: STRANCH, BUSH, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. After serving twenty-eight years of his seventy-year sentence for murder, William Virgil was released from prison and granted a new trial on the strength of new DNA evidence. The charges against him were subsequently dismissed. Virgil sued the City of Newport, Kentucky, and various police officers (collectively, Newport) under 42 U.S.C. § 1983, alleging, among other claims, malicious prosecution. But that is not this case; this is an insurance case. St. Paul Guardian Insurance Company, The Phoenix Insurance Company, and The Travelers

Indemnity Company of America (collectively, St. Paul) asked the district court for a declaratory judgment that they have no duty to defend or indemnify the City of Newport and its officers from Virgil's lawsuit. The district court granted that judgment. We disagree and therefore REVERSE and REMAND.

## I.

Retha Welch was raped and murdered in 1987. In 1988, Virgil was convicted for her murder and sentenced to seventy years in prison. In 2015, Virgil was released from prison in light of new DNA testing that excluded him as the source of the semen found on Welch. When a Kentucky grand jury declined to indict him two years later, the charges against Virgil were dismissed. After his release, Virgil brought a § 1983 action against Newport, raising several claims, including malicious prosecution; due process violations for fabricating evidence and withholding exculpatory evidence; failure to intervene; failure to train, supervise, and discipline the city's police officers; and a conspiracy to "frame" Virgil for Welch's murder.

From July 2007 to July 2010, St. Paul insured Newport via three one-year insurance policies, each of which included an identical law-enforcement liability (LEL) provision.[1] The LEL provision reads as follows:

---

[1] St. Paul also covered Newport from July 2010 to July 2013 through three additional, though slightly different, one-year policies, and Newport argued below that various provisions of all six policies obligated St. Paul to defend and indemnify Newport. But, on appeal, Newport has abandoned this argument as to the latter three policies and any provisions other than the LEL provision of the first three policies (2007-2010). That abandonment, however, comes with a caveat: Newport maintains that through a "liberalization" provision in the fourth policy, coverage is available under the fourth policy if it is available under the third policy. St. Paul agrees that under that provision, Newport gets the benefit of "the broader of the coverage afforded to [Newport] under the language of the [third policy] *or* the language of the [fourth] policy." Thus, because we conclude that coverage is available under the third policy, it is likewise available under the fourth policy.

> **Law enforcement liability.** We'll pay amounts any protected person is legally required to pay as damages for covered injury or damage that:
> - results from law enforcement activities or operations by or for you;
> - happens while this agreement is in effect; and
> - is caused by a wrongful act that is committed while conducting law enforcement operations.

The policies define "injury or damage" as "bodily injury, personal injury, or property damage." Under the policies, "bodily injury" means "any harm to the health of other persons" and "personal injury" means any "injury, other than bodily injury, caused by any of the following wrongful acts[, including] . . . [m]alicious prosecution."[2]

In accord with its reading of those policies, Newport "demand[ed] that [St. Paul] defend and indemnify [Newport] with respect to [Virgil's] claims." In response, St. Paul sought a declaration from the district court that it had no duty to defend or indemnify Newport under those policies. Both parties moved for summary judgment. St. Paul argued that the LEL provision of the policies did not provide coverage "because the personal injury complained of by Virgil happened decades prior to the [policies' coverage] periods." The district court agreed and granted St. Paul's motion. Newport timely appealed.

## II.

"We review a district court's summary judgment decision de novo, applying the same standards the district court used." *Franklin Am. Mortg. Co. v. Univ. Nat'l Bank of Lawrence*, 910 F.3d 270, 275 (6th Cir. 2018). Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

---

[2] We refer to Newport's alleged wrongful conduct throughout the opinion as "malicious prosecution" because the parties agree that "the 'same rubric' that applies to malicious prosecution claims applies to each of the claims in the Virgil Suit" or at least "provides the closest analogy to claims of the type considered here." Because the policies also list "[v]iolations of civil rights protected under federal, state, or local law" as applicable wrongful conduct, we agree.

P. 56(a). We consider the facts and all related inferences "in the light most favorable to the party against whom summary judgment was entered." *Franklin*, 910 F.3d at 275 (quoting *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)).

The "only contested issue" on appeal is one of contract interpretation—whether Virgil's alleged injuries "happen[ed] while" any of the relevant insurance policies were "in effect." "As a general rule, interpretation of an insurance contract is a matter of law for the court." *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 402 (6th Cir. 2019) (quoting *Stone v. Ky. Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 810 (Ky. Ct. App. 2000)). When interpreting insurance contracts in diversity cases, we "apply Kentucky law in accordance with the controlling decisions of the Supreme Court of Kentucky." *Id.* (quoting *Auto Club Prop.-Cas. Ins. Co. v. B.T. ex rel. Thomas*, 596 F. App'x 409, 413 (6th Cir. 2015)). If, as here, "the state supreme court has not yet addressed the issue presented, we must predict how the court would rule by looking to all the available data." *Id.* (quoting *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001)).

Under Kentucky law, the terms of an insurance contract "which have no technical meaning in law, must be interpreted in light of the usage and understanding of the common man." *State Farm Mut. Auto. Ins. Co. v. Slusher*, 325 S.W.3d 318, 322 (Ky. 2010) (quoting *Bituminous Cas. Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 638 (Ky. 2007)). St. Paul must defend Newport if any of Virgil's allegations "potentially, possibly[,] or might come within the coverage of the policy," *United Specialty Ins.*, 936 F.3d at 403 (quoting *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991)). Indeed, "the duty to defend is broader than the duty to indemnify." *James Graham Brown Found.*, 814 S.W.2d at 280. We compare "the allegations in [Virgil's] underlying complaint with the terms of the insurance policy"

to make both determinations. *United Specialty Ins.*, 936 F.3d at 403 (quoting *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 507 (6th Cir. 2003)).

The Fifth Circuit recently interpreted the same policy language that we consider here. As that court noted:

> The . . . policy provides coverage for "injury or damage that . . . happens while this agreement is in effect." That temporal requirement applies only to the injury. The two other requirements for coverage—that the injury resulted from the insured's "law enforcement activities" and was "caused by a wrongful act that is committed while conducting law enforcement operations"—do not have a temporal limitation. [The insurer] thus bargained for an injury-based trigger of coverage, not an act-based trigger.

*Travelers Indem. Co. v. Mitchell*, 925 F.3d 236, 241 (5th Cir. 2019) (second alteration in original). We agree with this reading of the policy and with the Fifth Circuit's assessment that, "[u]nder the policy's plain terms, [the insurer] must defend any claim in which covered injuries occurred" while the agreements were in effect (here, between July 2007 and July 2010) "regardless of when the wrongful causal act occurred." *Id.* St. Paul seems to agree with this reading as well. *See* Appellee Br. at 20 ("[T]he occurrence which triggers coverage is the claimant's injury, not the policyholder's wrongful act.").

Two questions then, are vital: What are Virgil's alleged injuries? And when did they happen? We look first to what injuries Virgil alleged. *See id.* Virgil says that he "spent more than 28[ ]years incarcerated for crimes he did not commit," resulting in "emotional pain and suffering" and "loss of a normal life," depriving him of "nearly a decade of life experiences." But St. Paul contends that Virgil suffered a "malicious prosecution injury," which "happened" or was "caused at the time of the wrongful institution of the legal process." In St. Paul's view, the "unlawful detention that follows simply forms part of the damages for the malicious prosecution injury" that happened earlier. But St. Paul's argument misreads the complaint and is contrary to the plain terms of the LEL provision.

First, Virgil did not allege a malicious prosecution *injury*; he raised, among others, a malicious prosecution *claim*. The injuries alleged in his complaint are the various harms that were caused by or flowed from that wrongful act.

Second, the policies by their terms cover "damages" that the insured is "legally required to pay" for any "personal injury," i.e., any "injury caused by any of the following wrongful acts[, including] . . . [m]alicious prosecution." Thus, by the plain terms of the LEL Provision, covered personal injuries include any injuries *caused by* the wrongful act—malicious prosecution. Malicious prosecution cannot, therefore, *be* the injury. The policy does not define the term "injury" in isolation, but it has been reliably defined elsewhere to mean "a wrong inflicted or suffered," or a "[h]urt or loss caused to or sustained by a person." *Injury*, *Oxford English Dictionary* (2d ed. 1989).

We believe that this definition is consistent with how a common person would understand or use the word "injury." *See State Farm Mut. Auto. Ins.*, 325 S.W.3d at 322. It is also consistent with Newport's argument that Virgil's injury was the "loss of personal liberty and attendant emotional pain and suffering caused as those years [of imprisonment] passed Virgil by." And there is no dispute that such injuries were caused by the alleged wrongful act of malicious prosecution.

As to when Virgil's injuries happened, St. Paul contends that they happened when he was "criminally charged or bound over for trial." To support this contention, St. Paul relies on what it calls the "majority rule." Under this rule, St. Paul explains, "courts in numerous jurisdictions have . . . held that malicious prosecution claims trigger coverage under policies in effect only at the initiation of the prosecution." St. Paul points to three cases that it says held as much while analyzing the precise language before us here: *St. Paul Fire and Marine Insurance Co. v. City of*

*Zion*, 18 N.E.3d 193 (Ill. App. Ct. 2014), *TIG Insurance Co. v. City of Elkhart*, 122 F. Supp. 3d 795 (N.D. Ind. 2015), and *St. Paul Fire and Marine Insurance. Co. v. City of Waukegan*, 82 N.E.3d 823 (Ill. App. Ct. 2017). But only *City of Zion* offers an extended discussion of the policy language as applied to a malicious prosecution claim. *See* 18 N.E.3d at 194–200; *see also City of Waukegan*, 82 N.E.3d at 833–38 (relying on *City of Zion*'s reasoning when analyzing when the injury happened for *Brady* and compelled-confession claims); *City of Elkhart*, 122 F. Supp. 3d at 807–08 (analyzing the question in one paragraph).

In *City of Zion*, St. Paul covered the city at the time the accused was released from prison; other insurers covered the city when the alleged act of malicious prosecution took place. 18 N.E.3d at 195. The competing insurers and the court therefore framed the issue before it as "whether the occurrence triggering coverage under the policy is the commencement of the alleged malicious prosecution or its termination in favor of the accused." *Id.* at 194, 196. Looking at the "plain language of the policy," the court concluded that "[f]avorable termination of the prosecution cannot be the occurrence that triggers coverage, because termination marks the 'beginning of the judicial system's remediation' of the wrong," so the alleged "injury results upon the commencement of a malicious prosecution." *Id.* at 197, 200 (citation omitted); *see also City of Elkhart*, 122 F. Supp. 3d at 808 ("What seems like the most sensible reading of 'damage' caused by the wrongful law enforcement acts occurred when Parish was falsely arrested, falsely charged, and falsely convicted."). Although we agree that a covered injury does not happen upon exoneration, we do not agree that the plain language of the policy supports *City of Zion*'s conclusion.

*City of Zion* treated the question before it as a dichotomy: either the injury occurs at the time of the commencement of the prosecution or upon exoneration. But nothing in the policy

requires that temporal dichotomy. The only temporal language in the policy is "happens while this agreement is in effect," and that temporal language modifies "injury . . . caused by . . . [m]alicious prosecution." If, as we explained above, injury is best understood as harm or loss, the question is when the harm or loss caused by the malicious prosecution happened. There is no reason to read that language as excluding the possibility that the malicious prosecution caused harm or loss after the prosecution began but before exoneration.

Indeed, there are at least two reasons to believe that the policies should *not* be read that way. First, as previously noted, these policies feature an "injury-based trigger of coverage, not an act-based trigger." *See Mitchell*, 925 F.3d at 241. But to understand injuries caused by the malicious prosecution to happen only when the malicious prosecution begins comes close to rewriting the policies as containing an act-based trigger.

Second, St. Paul knows how to bargain for the terms it now seeks. The LEL provision in these very policies states that some forms of property damage are considered "to happen at the time of the wrongful act that caused it." This language resembles that found in the "deemer clause" of the policies St. Paul issued to Newport from July 2010 to July 2013 (the Fourth, Fifth, and Sixth Polices). The deemer clause in those policies reads: "All 'bodily injury', 'property damage' or 'personal injury' caused by the same 'wrongful act' or 'related wrongful acts' will be deemed to occur when the first part of such 'bodily injury', 'property damage' or 'personal injury' occurs." St. Paul argues that neither the addition of the deemer clauses in the later policies nor the fact that the language of the first three policies could have been written to "remove all doubt" should compel the conclusion that the first three policies trigger coverage for personal injury at any time other than "the filing of charges." That might be right. That the parties wrote with more precision in later contracts is not necessarily conclusive of the earlier contracts' meaning. But here more

precise language in the *same* LEL provision of the *same* policies—"deeming" property damage, but not personal injury, to have "happen[ed] at the time of the wrongful act that caused it"— demonstrates that St. Paul knew at the time of the first three contracts how to clearly achieve the reading it circuitously argues for now.

We take the policies at face value. They provide coverage for injury that "happens while the agreement is in effect" and is "caused by . . . [m]alicious prosecution." As the district court noted, "every day he spent in prison, Mr. Virgil suffered from injury; obviously, wrongful imprisonment and the resultant physical and dignitary harms that accompany such confinement represent[] a continuous and ongoing injury." *St. Paul Guardian Ins. Co. v. City of Newport*, 416 F. Supp. 3d 671, 681–82 (E.D. Ky. 2019). Those injuries were caused by the malicious prosecution and were continuous, that is, they happened repeatedly, during the relevant coverage period. We conclude that these injuries are covered by the policy language as that language would be used and understood by the common person, *State Farm Mut. Auto. Ins. Co.*, 325 S.W.3d at 322, and at a minimum, we cannot say that these injuries are clearly *not* covered, *id.* (stating that under Kentucky law, "ambiguous language must be liberally construed so as to resolve all doubts in favor of the insured" (quoting *Bituminous Cas. Corp.*, 240 S.W.3d at 638)).

"At bottom," St. Paul asks us to say that only "a single moment of injury" triggers coverage under these policies, "even when the polic[ies'] terms do not." *Mitchell*, 925 F.3d at 246. But, under Kentucky law, these policies "must receive a reasonable interpretation . . . expressed in the plain meaning and/or language of the contract[s]"; it is not for us to rewrite them. *Brown v. Ind. Ins. Co.*, 184 S.W.3d 528, 540 (Ky. 2005) (quoting *St. Paul Fire & Marine Ins. Co. v. Powell–Walton–Milward, Inc.*, 870 S.W.2d 223, 226–27 (Ky. 1994)). Coverage is thus available for July 2007 to July 2010 under the first three policies. And because of the "liberalization" provision, *see*

fn. 1, *supra*, coverage is also available from July 2010 to July 2011 under the fourth policy. We therefore reverse the district court's conclusion that St. Paul is not obligated to defend or indemnify Newport against Virgil's lawsuit.

Newport also asks us to the hold that St. Paul "cannot deny coverage on the basis of the 'Criminal Acts' exclusion nor on the basis that the Newport Defendants were acting outside the scope of their employment." These issues were not addressed below because they were rendered moot by the district court's grant of summary judgment to St. Paul. Consistent with the "general rule," that "a federal appellate court does not consider an issue not passed upon below," *Singleton v. Wulff*, 428 U.S. 106, 120 (1976), we leave it to the district court to address those issues on remand.

* * *

For the reasons stated, we REVERSE the district court's grant of summary judgment and REMAND for further proceedings.